J-A30007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMAL DURHAM | : | |
| | : | |
| Appellant | : | No. 3331 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 21, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003902-2019

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED APRIL 14, 2026**

Jamal Durham appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following the revocation of his probation. Durham was resentenced to a period of total confinement of one to two years' incarceration. After careful review, we vacate Durham's judgment of sentence and remand for proceedings consistent with this memorandum.

On June 5, 2019, the Commonwealth charged Durham with possession with intent to deliver—cocaine (PWID)[1] and possession—cocaine.[2] On September 17, 2019, Durham entered into a hybrid guilty plea before the Honorable Rayford A. Means, wherein he agreed to plead guilty to PWID and

---

[1] 35 P.S. § 780-113(a)(30).

[2] *Id.* at § 780-113(a)(16).

the Commonwealth agreed to *nolle prosse* the possession charge. There was no agreement as to sentence. Judge Means deferred sentencing and, on November 19, 2019, sentenced Durham to 11½ to 23 months' incarceration followed by 5 years' probation. Additionally, Judge Means immediately paroled Durham.

On January 13, 2021, Judges Means approved a probation warrant to arrest Durham for alleged probation violations. On June 8, 2021, Durham was arrested and Judge Means lodged a detainer on Durham pending probation revocation proceedings. Later the same day, Judge Means lifted Durham's detainer and scheduled a ***Gagnon II***[3] hearing.

On September 21, 2021, after ***Gagnon*** proceedings, Judge Means issued an order that states: "AND NOW, this 21st day of September, 2021, after consideration of the Motion to Continue Probation/Parole by the Attorney for the Defendant it is ORDERED that the Motion to Continue Probation/Parole is GRANTED." Order Continuing Probation/Parole, 9/21/21, at 1.[4] As it relates to our disposition, Judge Means did not find any technical violations and did not revoke Durham's probationary sentence.

_____

[3] ***See Gagnon v. Scarpelli***, 411 U.S. 778 (1973).

[4] We note this is the first of many record deficiencies before this Court. In particular, there is no "Motion to Continue Probation/Parole" mentioned on the docket, and there is no such motion in the certified record. Nevertheless, we acknowledge that it theoretically could have been an oral motion; however, there are no transcripts from this probation proceeding. As a result, we have no way of discerning what transpired during this first set of probation proceedings.

Subsequently, on May 20, 2022, the trial court conducted a *Gagnon I* hearing based upon new technical violations.[5]  On July 19, 2022, Judge Means issued an order that states:  "AND NOW, this 19th day of July, 2022, after consideration of the motion for continuation of probation by the Attorney for the Defendant it is ORDERED that the motion for continuation of probation is GRANTED."  Order Continuing Probation, 7/19/22, at 1.  Similar to the prior probation proceedings, Judge Means did not find any technical violations and did not revoke Durham's probationary sentence.  Subsequently, on January 1, 2024, Judge Means retired and Durham's case was reassigned to the Honorable Natasha Taylor-Smith.

On April 11, 2024, Judge Taylor-Smith approved an arrest warrant for Durham based upon new alleged technical probation violations consisting of his absconding after failing a urine drug test.  Specifically, on February 7, 2024, Durham completed an inpatient rehabilitation treatment program for his drug addictions but, immediately after completion, on February 9, 2024, failed a urine drug-test.  On February 12, 2024, Durham absconded and stopped reporting to probation.  In October 2024, Durham was apprehended and appeared for a *Gagnon I* hearing, after which Judge Taylor-Smith lodged a detainer on Durham.  On November 8, 2024, Judge Taylor-Smith denied

---

[5] Again, we note that the record is devoid of any transcript or reference to a *Gagnon II* hearing, and there are no motions of record in relation to these alleged technical violations.

Durham's motion to remove detainer.[6]  On November 18, 2024, Judge Taylor-Smith conducted a *Gagnon II* hearing, after which she concluded that Durham was in technical violation of his probation because he had absconded, failed to report to probation, and "submitted a dirty urine" prior to absconding.

In particular, Judge Taylor-Smith concluded that the instant probation violation was Durham's third technical violation, that he could not be safely diverted as required by 42 Pa.C.S.A. §§ 9771(c)(1)(iii)(E)-(F), and, therefore, Durham could be sentenced as a third-time technical violator under subsection 9771(c)(2)(iii).  As a result, on November 21, 2024, Judge Taylor-Smith revoked Durham's probation and imposed a revocation sentence of total confinement period of one to two years' incarceration.

On November 24, 2024, Durham filed a post-sentence motion challenging Judge Taylor-Smith's conclusion that he had violated probation on two prior occasions.  In particular, Durham argued that Judge Means never found him to be in violation of probation; rather, Judge Means heard the allegations and, instead, "continued" probation.  Durham requested that he be resentenced only as a first-time technical violator under subsection 9771(c)(2)(i), to a maximum period of incarceration of 14 days.  Alternatively, Durham contended that he could be safely diverted and, thus, Judge Taylor-Smith's sentence violated subsections 9771(c)(1)(iii)(E) and (F).  On

---

[6] We note, just like Durham's prior motions to remove detainer, this motion does not appear in the record before us.  However, it is referenced in the docket sheet.

- 4 -

December 4, 2024, Judge Taylor-Smith denied Durham's post-sentence motion.

Durham filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Durham now raises the following claims for our review:

1. Did [Judge Taylor-Smith] impose an illegal sentence and abuse [her] discretion by sentencing [Durham] to total confinement for technical violations of probation where it was not proven, as required under 42 Pa.C.S.[A.] § 9771(c)(2), that [Durham] could not "be safely diverted from total confinement through less restrictive means"?

2. Did [Judge Taylor-Smith] impose an illegal sentence and abuse [her] discretion under 42 Pa.C.S.[A.] § 9771(c)(2) by sentencing [Durham] to one to two years' incarceration for a "third or subsequent" technical violation, where [Durham] had never previously been found in technical violation of probation and[,] thus[,] was subject to the statute's 14-day maximum jail sentence for first-time violators?

Brief for Appellant, at 2.

Durham's arguments are distinct, but logically flow into one another and, as such, we address them together. In his first claim, Durham argues that Judge Taylor-Smith imposed an illegal sentence in violation of subsection 9771(c)(2) by sentencing him to a period of total confinement, where he could have been safely diverted through less restrictive means. *See id.* at 12-19. In particular, Durham contends that Judge Taylor-Smith found him in violation of probation under two subparagraphs, (E) and (F), and that both subparagraphs require a finding that Durham could not be safely diverted from total confinement by less restrictive means. *See id.* at 15-19. For

- 5 -

subparagraph (E), Durham asserts that Judge Taylor-Smith was required to find that he had (1) absconded and (2) could not be safely diverted. ***See id.*** Likewise, for subparagraph (F), Durham alleges that Judge Taylor-Smith was required to find that he had (1) committed three distinct technical violations and (2) could not be safely diverted. ***See id.*** Durham acknowledges that, with respect to subparagraph (E), Judge Taylor-Smith properly found that Durham had absconded, but asserts that he could have been safely diverted as the Commonwealth suggested at sentencing, to a "less restrictive alternative" of 11 ½ to 23 months in county jail with immediate parole to a treatment facility. ***See id.*** at 17. Regarding subparagraph (F), Durham posits that Judge Taylor-Smith improperly found him to have three distinct technical violations, where Judge Means' prior orders did not expressly find any violations but merely "continued probation." ***See id.*** at 18-19.

In his second argument, Durham asserts that, even if Judge Taylor-Smith properly found the Commonwealth satisfied either subparagraph (E) or (F), the instant violation should count as his "first" because Judge Means never found Durham in violation. ***See id.*** at 19-35. Regarding subparagraph (F), Durham asserts that his instant violations of absconding, failure to report to probation, and failing a drug test should be, essentially, bundled and count only as one technical violation for purposes of subsection 9771(c)(2), resulting in a 14-day maximum penalty. ***See id.*** Regarding subparagraph (E), Durham contends that only the "absconding" violation counts towards the number of violations in subsection 9771(c)(2) and, consequently, he should only be

subject to the 14-day maximum penalty. ***See id.*** Thus, Durham asserts that because his prior appearances before Judge Means did not result in findings of technical violations, Judge Means' orders "continuing probation" cannot be counted as prior technical violations for the purposes of revocation sentencing under subsection 9771(c)(2). ***See id.*** Upon review, we agree in part and disagree in part.

Recently, this Court, sitting en banc, concluded that a "challenge to the trial court's authority to impose a sentence pursuant to section 9771(c) is a legality of sentencing claim[.]" ***Commonwealth v. Seals***, --- A.3d --- (Pa. Super. filed Feb. 17, 2026) (en banc). Thus, our standard of review is *de novo* and our scope of review is plenary. ***See Commonwealth v. Wolfe***, 106 A.3d 800, 802 (Pa. Super. 2014). Additionally, we are cognizant that "all provisions of the Sentencing Code amended by Act 44 apply to defendants who were sentenced or resentenced on or after June 11, 2024, and, with [the] exception of the portion of Act 44 codified at 42 Pa.C.S.[A.] § 9774.1, apply retroactively to defendants sentenced on or before that date." ***See Seals***, ***supra***.

Section 9771 states in relevant part:

(b) The court may increase the conditions, . . . or revoke an order of probation upon proof of the violation of specified conditions of the probation. Subject to the limitations of subsections (b.1) and (c), upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation. The attorney for the Commonwealth may file notice at any time prior to resentencing of the Commonwealth's intention to proceed under an applicable provision of law requiring a mandatory minimum sentence.

- 7 -

\* \* \*

(c) Limitation on sentence of total confinement.--**There is a presumption against total confinement for technical violations of probation.** The following shall apply:

(1) The court may impose a sentence of total confinement upon revocation only if:

\* \* \*

(iii) the court finds by a preponderance of the evidence that the defendant committed a technical violation and any of the following apply:

(A) The technical violation was sexual in nature.

(B) The technical violation involved assaultive behavior or included a credible threat to cause bodily injury to another, including acts committed against a family or household member.

(C) The technical violation involved possession or control of a firearm or dangerous weapon.

(D) The technical violation involved the manufacture, sale, delivery[,] or possession with the intent to manufacture, sell[,] or deliver, a controlled substance or other drug regulated under . . . [t]he Controlled Substance, Drug, Device[,] and Cosmetic Act.

**(E) The defendant absconded and cannot be safely diverted from total confinement through less restrictive means.**

**(F) The technical violation involved an intentional and unexcused failure to adhere to recommended programming or conditions on three or more separate occasions and the defendant cannot be safely diverted from total confinement**

> **through less restrictive means. For purposes of this clause, multiple technical violations stemming from the same episode of events shall not constitute separate technical violations.**

42 Pa.C.S.A. §§ 9771(b), (c)(1)(iii)(E)-(F) (emphasis added).

In ***Seals***, this Court explained that section 9771 authorizes a trial court to exercise its discretion to choose among sentencing alternatives that were available at the time of the initial sentencing. ***See Seals***, ***supra***. However, in the context of technical violations, the plain language of section 9771 limits "this discretion . . . for resentences to terms of incarceration." ***Id.*** We recognized that section 9771(c) contains an express "presumption that total confinement is not warranted for technical violations of probation and authorizes the [trial] court to impose a term of imprisonment **only if** one of the statutory prerequisites in subsection (1) exists." ***Id.*** at *2 (emphasis added, quotations omitted). Once the technical violations are proven by a preponderance of the evidence, the trial court must then rule out less restrictive sentencing alternatives. ***See id.***; ***see also*** 42 Pa.C.S.A. §§ 9771(c)(1)(i)-(iii). In other words, it is the Commonwealth's burden to prove, by clear and convincing evidence, that one of the exceptions against the prohibition of revocation sentencing to total confinement based upon technical violations was met. ***See*** 42 Pa.C.S.A. §§ 9771(c)(1)(iii).[7]

---

[7] We note that subsection 9771(c)(1)(ii) requires the Commonwealth to demonstrate by clear and convincing evidence. ***See id.*** at §§ 9771(c)(1)(ii).

As it is relevant to our disposition, we must consider the language of subparagraphs (E) and (F), as those subparagraphs impose an additional and distinct requirement. *See id.* at §§ 9771(c)(1)(iii)(E)-(F); *cf. id.* at §§ 9771(c)(1)(iii)(A)-(D). In particular, both subparagraphs (E) and (F) have the additional requirement that "the defendant cannot be safely diverted from confinement through less restrictive means." *Id.* at §§ 9771(c)(1)(iii)(E), (F). Additionally, subparagraph (F) includes clarifying language that "[f]or the purposes of this clause, multiple technical violations stemming from the same episode of events **shall not** constitute separate technical violations." *Id.* at §§ 9771(c)(1)(iii)(F) (emphasis added). Thus, in order for a trial court to impose a sentence of total confinement for technical violations under either subparagraphs (E) or (F), the Commonwealth must also demonstrate, by a preponderance of the evidence, that the probationer cannot be safely diverted through less restrictive means. *Id.* at §§ 9771(c)(1)(iii)(E)-(F). In short, for subparagraph (E), the Commonwealth must demonstrate that the defendant (1) absconded and (2) cannot be safely diverted. *See id.* at § 9771(c)(1)(iii)(E). Regarding subparagraph (F), the Commonwealth must demonstrate that (1) the defendant committed an intentional or unexcused failure to comply adhere to recommended programming conditions on three or more occasions and (2) cannot be safely diverted. *See id.* at § 9771(c)(1)(iii)(F). Consequently, in line with our reasoning in *Seals*, failure to meet either of these requirements results in an illegal sentence. *See Seals*, *supra*.

Instantly, we address Durham's arguments regarding subparagraph (F) first. Durham committed only two technical violations that gave rise to the instant proceedings. First, on February 9, 2024, Durham failed a urine drug-test. Second, from February 12, 2024 until October 2024, Durham absconded from probation without notice or permission and failed to report to probation during that time. For the purposes of subparagraph (F), Durham's absconding and his failures to report to probation are part of the same, albeit extended, episode. Thus, they result in one collective technical violation. **See** 42 Pa.C.S.A. § 9771(c)(1)(iii)(F) ("For the purposes of this clause, multiple technical violations stemming from the same episode of events shall not constitute separate technical violations."). Indeed, the record reflects that Durham's period of absconding lasted from February 12, 2024 until October 2024, when he was arrested and placed on bail pending his **Gagnon** proceedings. Thus, the Commonwealth failed to demonstrate that Durham committed the three or more distinct technical violations required for subparagraph (F) to apply. Consequently, the trial court erred by finding that subparagraph (F) applied to Durham.[8]

_____

[8] We, again, emphasize that subparagraphs (E) and (F) require that **both** elements be met prior to a sentence of total confinement. **See** 42 Pa.C.S.A. §§ 9771(c)(1)(iii)(E) ("The defendant absconded **and** cannot be safely diverted from total confinement through less restrictive means") (emphasis added); **id.** at § 9771(c)(1)(iii)(F) ("The technical violation involved an intentional and unexcused failure to adhere to recommended programming or conditions on three or more separate occasions **and** the defendant cannot be safely diverted from total confinement through less restrictive means.") *(Footnote Continued Next Page)*

- 11 -

Next, regarding subparagraph (E), we note that Durham conceded he was absconding from probation in violation of that provision and, thus, the only question is whether Durham could have been safely diverted through less restrictive means. Here, the trial court cogently acknowledged that Durham completed inpatient rehab, immediately failed a drug urine-test, and then absconded for over eight months and failed to report to probation during that time. Under these circumstances, we conclude that Judge Taylor-Smith did not err in concluding that Durham could not be safely diverted. Indeed, Durham himself demonstrated that inpatient rehabilitation was not successful for him as he began using drugs immediately after being discharged. Consequently, the Commonwealth satisfied its burden under subparagraph (E), and Judge Taylor-Smith could exercise her authority to sentence Durham to a period of total confinement. *See* 42 Pa.C.S.A. § 9771(c)(1)(iii)(E).

Once a trial court has discerned that the Commonwealth has met its burden with respect to one of the exceptions outlined in subsection 9771(c)(1)(iii), the trial court shall sentence the defendant in accordance with subsection (c)(2), which states as follows:

> (2) If a court imposes a sentence of total confinement following a revocation, the basis of which is for one or more

---

(emphasis added). Here, as explained, the Commonwealth failed to demonstrate that Durham committed three or more violations pursuant to subparagraph (F) and thus, we need not address whether he could be safely diverted under this subparagraph. *See id.* at § 9771(c)(1)(iii)(F). Nevertheless, we address, *infra*, Durham's inability to be safely diverted as it relates to subparagraph (E).

- 12 -

technical violations under paragraph (1)(ii) or (iii), the court shall consider the employment status of the defendant. The defendant shall be sentenced as follows:

(i) For a first technical violation, a maximum period of 14 days.

(ii) For a second technical violation, a maximum period of 30 days.

(iii) For a third or subsequent technical violation, the court may impose any sentencing alternatives available at the time of initial sentencing.

(iv) The time limitations contained in this paragraph shall not apply to the extent that a reasonable term of additional total confinement, not to exceed 30 days, is necessary to allow a defendant to either be evaluated for or to participate in:

(A) a court-ordered drug, alcohol[,] or mental health treatment program; or

(B) a problem-solving court provided for in section 916 (relating to problem-solving courts).

(3) Nothing in this section shall prevent the adoption of a program [to establish swift, predictable, and brief probation violation sanctions] under section 9771.1.

42 Pa.C.S.A. §§ 9771(c)(2).

Instantly, Judge Taylor-Smith properly concluded that the Commonwealth satisfied subparagraph (E) and, thus, could only sentence Durham to the 14-day maximum sentence outlined in subsection (c)(2)(i). *See id.* We are cognizant that Judge Taylor-Smith and the Commonwealth urge us that, because Durham can be sentenced to total confinement due to

subparagraph (E), that they can, effectively, shoehorn in his failure to report to probation and his drug test failure as two additional violations. Under this argument, Durham would thus fall under subsection 9771(c)(2)(iii), as a third or subsequent violator. We disagree.

The language of subsection 9771(c)(2) is clear that cases where a trial court imposes total confinement for a revocation sentence "the **basis of which** is for one or more technical violations under paragraph (1)(ii) or (iii), . . . [t]he defendant shall be sentenced . . . (i) [f]or a first technical violation, a maximum period of 14 days." 42 Pa.C.S.A. § 9771(c)(2)(i) (emphasis added). In our view, subsection 9771(c)(2)(i) requires that a technical violation can be counted **only if** it meets one of the exceptions set forth in subsection 9771(c)(1)(ii) or (iii). *See id.* Thus, as explained above, neither Durham's failure to report to probation during his absconding, nor his failed drug test can be considered for the purposes of his revocation sentencing under subsection 9771(c)(2) because they do not meet any of the enumerated exceptions in subsections 9771(c)(1)(ii) or (iii).

In reaching this conclusion, we observe that the language of subsection 9771(c)(2) is clear that, when revoking probation and imposing a sentence of total confinement, the trial court shall "count" the **total number of technical violations**, not the number of *Gagnon* proceedings or revocations. *See* 42 Pa.C.S.A. § 9771(c)(2) ("(i) for a **first technical violation**, a maximum period of 14 days. (ii) for a **second technical violation**, a maximum period of 30 days. (iii) for a **third or subsequent technical violation**, the court

may impose any sentencing alternatives available at the time of initial sentencing.") (emphasis added). However, we emphasize, as we did above, that Durham's prior ***Gagnon*** proceedings before Judge Means **did not result in technical violations**. ***See id.*** at § (b) ("The [trial] court may increase the conditions[ of probation], . . . **upon proof of the violation of specified conditions of the probation**.") (emphasis added). As noted above, Judge Means made **no** findings of violations. Buth, rather ordered "probation continued." The record is devoid of information as to whether Judge Means found Durham to be in technical violation on either of the prior occasions and gave him second chances, or, if Judge Means found the probation department's evidence in those prior proceedings to be lacking. Consequently, there is no requisite proof, for the purposes of section 9771, that Durham had any prior technical violations. Therefore, we conclude that Judge Means' orders "continuing probation" cannot be counted as prior technical violations for calculating periods of total confinement under subsection 9771(c)(2) and that Judge Taylor-Smith erred in concluding otherwise.[9]

In summation, Judge Taylor-Smith erred in concluding subsection 9771(c)(1)(iii)(F) applied to Durham, but properly discerned that

---

[9] In our view, if Judge Means had found Durham in technical violation on those two prior occasions, then Durham's instant violation under subparagraph (E) would count as his "third." However, as explained, that issue is not before us as the record makes clear that Judge Means did not find Durham in violation.

- 15 -

subparagraph (E) applied. Furthermore, only the technical violations that satisfy one of the enumerated exceptions set forth in subsections 9771(c)(1)(ii) or (iii) can be counted for purposes of calculating the maximum sentencing options set forth in subsections 9771(c)(2)(i)-(iii). As a result of the foregoing, Durham's revocation sentence of total confinement to one to two years' incarceration is illegal because the permitted maximum applicable to Durham was 14 days under subsection 9771(c)(2)(i). Accordingly, we vacate Durham's revocation sentence and remand for proceedings consistent with *Seals*, 42 Pa.C.S.A. § 9771, and this memorandum.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/14/2026